# ROCKINGHAM,

## JULY TERM, A. D. 1857.

---

### JONES *v.* PIERCE *et a.*

Where one agrees as guarantor that the principal shall pay a debt within a specified time, and the creditor draws a bill for the amount on the debtor, payable to a third party, at a given day within the time specified, if the payee and holder of the bill neglect to present it to the drawee for payment, the guarantor is discharged from his liability.

If one is indebted for work and labor, and is summoned in a process of foreign attachment as trustee of his creditor, in a suit where the real demand against the principal defendant exceeds in amount the debt due to him from the trustee; and the trustee, pending the foreign attachment, agrees with the principal defendant to pay for him, toward discharging the debt due to him from the trustee, such of the principal's debts as he may designate, to a limited amount, provided the payment of the debts so designated should not be *incompatible* with the trustee's liability in processes of foreign attachment, the trustee is not bound to pay any designated debts of the principal while the foreign attachment is pending, unless it be the debt sued in that process.

ASSUMPSIT against Joshua W. Pierce, Alfred W. Haven, James W. Emery, Alexander Ladd and Josiah G. Hadley, commenced August 23, 1853. The plaintiffs, Hale and Jones, alleged in their declaration that they were surviving partners of the firm of Belknap, Hale and Jones; that the defendants, on the 28th of September, 1849, in consideration that the plaintiffs had agreed to discontinue a suit commenced by them against the Portsmouth and Concord Railroad, promised, by their memorandum in writing, that the said road should, within three months, pay, or cause to be paid or satisfied, the demands of persons

against the plaintiffs, as survivors of the said firm, a sum which, with the sums already paid to them by the railroad, should amount to ten thousand dollars, said payments to be designated by said Jones, and not to be incompatible with the legal liabilities of the railroad in suits where they were summoned as trustees of the plaintiffs; and averred that within the three months, to wit, on the 17th of November, 1849, Jones designated the Piscataqua Exchange Bank as one of the creditors of the firm that had furnished Belknap, Hale and Jones money for building the road, and designated the sum of $2453.30 to be paid the bank out of the ten thousand dollars; and, in the name of the firm of Belknap, Hale and Jones, drew a draft on the railroad, requesting them to pay the bank, ninety days after date, $2453.30, with interest; that the railroad the same day accepted the draft, which was delivered to the bank; that the railroad have never paid the draft, but the plaintiffs have been called on as drawers, and compelled to take it up. The declaration also contained counts for money paid, and for money had and received.

Plea, the general issue.

On trial the plaintiffs produced the written agreement declared on, dated September 25, 1849, which recites that the said road had agreed to pay, or cause to be paid, to the amount of ten thousand dollars, the claims and demands of all persons against Hale and Jones, as surviving partners, for work done, or money or other things furnished them while engaged in building the railroad; and in consideration that Hale and Jones had agreed to discontinue their suit against the railroad, to recover for work done on the road, the railroad promises and agrees with Hale and Jones in manner following: "That within three months of the date hereof the said railroad will pay, or cause to be paid or satisfied, the demands and claims of persons against said Jones and Hale, as such surviving partners, for work done, or other things furnished to them while engaged in building said railroad, to an amount which, with orders already drawn by them upon said railroad, and by said railroad paid, or to be paid,

in favor of their creditors, shall amount to the sum of ten thousand dollars, the payments to be designated by said Jones, and not to be incompatible with the legal liabilities of said railroad as trustees of said Jones and Hale. And we whose names are hereto signed, in consideration aforesaid, do hereby become sureties that the said railroad shall perform the aforesaid agreement." The agreement was executed by the railroad as principals, and signed by the defendants as sureties.

The plaintiffs also produced the draft of Belknap, Hale and Jones on the railroad, dated November 17, 1849, in the following terms: " Ninety days after date, for value received, pay to the Piscataqua Exchange Bank twenty-four hundred and fifty-three dollars, thirty cents, and charge the same to the account of Belknap, Hale and Jones. BELKNAP, HALE & JONES." Which was accepted the same day by the railroad and delivered to the bank. It also appeared by the written agreement of the parties that the draft had never been paid; that the draft was intended to be part of the ten thousand dollars named in the agreement, and was the only designation made by Hale and Jones of any sum to be paid to said bank under the agreement; that when the draft was drawn, a portion of the sum named in the agreement, larger than the amount of the draft, remained unappropriated and undesignated by Hale and Jones.

The plaintiffs offered evidence tending to show that the draft in favor of the bank was accepted with the knowledge and by order of the directors of the railroad with the understanding that it was part of the ten thousand dollars mentioned in their agreement; that at the date of the draft there was not money enough in the treasury to pay the amount; that the directors gave, and Jones took the acceptance instead of so much money; that the defendants, Haven, Pierce and Ladd, were at the time directors of the road and aware of this transaction.

It appeared on the part of the defendants that Charles Hale and James H. Price on the 8th of December, 1848, brought their action against Belknap, Hale and Jones, and summoned the railroad as their trustees for twenty thousand dollars; that this

---
Jones *v.* Pierce.
---

suit was prosecuted till February term 1850, when judgment was rendered against the principal defendants for $6,414.93 debt, and costs taxed at $104.74; but it did not appear that any judgment was rendered as to the trustees. It also appeared that Samuel Neal, on the 16th of February, 1849, sued Belknap, Hale and Jones, and summoned the railroad as trustees, and that at the February term, 1851, Neal recovered in that suit a judgment for fourteen hundred and eighty dollars and eight cents, and costs taxed at forty-nine dollars and sixty-eight cents, and that the railroad were charged as trustees for that amount, and execution taken out against them, but it did not appear that the railroad had paid any thing on the judgment.

Several other facts appeared on trial, not bearing on the points decided in the case. The trial having been commenced before the jury, was, by agreement, concluded before the presiding justice, who directed a verdict for the defendants, upon which judgment was to be rendered, or the verdict set aside and a new trial granted, or a judgment entered for the plaintiffs, according to the opinion of the court.

*W. H. Y. Hackett*, for the plaintiffs.

1. The draft of November 17, 1849, was a designation of the creditor and not a payment to him; it was not intended or regarded as payment by either party. The plaintiffs had the same right of action against the defendants after that draft as before. The Bank had the same right of action against the plaintiffs after the draft was put into their hands as before. It in no wise fulfilled, postponed or modified the defendant's contract.

2. The designation of this debt to the bank was not incompatible with the legal liabilities of the railroad as trustees. The defendants introduced evidence to show that there were suits against the railroads as trustees of the plaintiffs, and that judgments were rendered on them; but as the railroad has never paid any thing, and is not liable to pay any thing on account of those suits and judgments, this objection falls to the ground.

*Hatch*, for the defendants.

Jones v. Pierce.

1. The defendants are sureties merely for the Portsmouth and Concord Railroad. Their engagement was that the railroad should pay a certain sum within three months from September 25, 1849. The plaintiffs entered into a valid contract, the draft, with the railroad, to extend the time of payment to ninety days from November 17, 1849. This materially altered the risk of the sureties and discharged them. *Grafton Bank* v. *Woodward*, 5 N. H. 99; *Crosby* v. *Wyatt*, 10 N. H. 324; *Fowler* v. *Brooks*, 13 N. H. 324; *New-Hampshire Savings Bank* v. *Colcord*, 15 N. H. 119; *Rees* v. *Berrington*, 2 Vesey, Jr., 540, and note; *Southwick* v. *Sax*, 9 Wend. 122.

2. The designation of a payment to the bank was incompatible with the legal liabilities of the railroad, as trustees of the plaintiffs. The road was subject to trustee processes to the amount of $23,000, in which judgments were afterwards rendered to the amount of $8,049.45, and the railroad were actually charged to the amount of $1,530.76. But it is immaterial whether the railroad were actually charged, or have paid. They were liable to be charged to a greater amount than the $10,000, when the defendant's liability was paid.

3. The plaintiffs have no interest in this suit. They have requested the railroad "for value received" to pay to the bank. They have not taken up the draft, nor have they become legally chargeable as drawers. They do not offer to surrender the draft at the trial. *Jaffrey* v. *Cornish*, 10 N. H. 509; *Hughes* v. *Wheeler*, 8 Cowen 79.

*Hackett*, in reply.

The plaintiffs have not extended the time of payment. The true test is, "have the plaintiffs altered the contract?" The defendants could at any time have paid the $10,000, or the unpaid portion of it, to the designated creditor, and immediately have brought and sustained their action against the railroad. The draft was the designation under the contract, and, by making it, the plaintiffs have done no act which has extended or modified the contract. The draft was never discounted at the bank, nor

received by the plaintiffs as payment from the railroad, nor by the bank as payment by the plaintiffs. It was regarded by the bank as an order to pay the bank a sum of money towards a pre-existing debt. The money not being paid, the plaintiffs were required to take the order away, and give security for the money advanced to them for building the railroad.

It was sufficient answer to the objection, that the designation was incompatible with the liabilities of the railroad, as trustees; that the railroad never paid any thing on account of them.

It is said the plaintiffs have no interest in this suit; but they have an interest that their debt should be paid by those who contracted to pay it.

PERLEY, C. J. It appears by the case that the railroad, in discharge of the claims which the plaintiffs had for work done on the road, agreed in writing to pay debts of the plaintiffs contracted while they were engaged in building the road, to the amount, with sums already paid, or agreed to be paid, of ten thousand dollars, the payments to be designated by Jones, to be paid within three months, and not to be incompatible with the legal liabilities of the road, as trustees of Hale and Jones; and the defendants signed the contract as sureties for the performance of it.

The breach assigned is that the railroad did not pay $2453.30 to the Piscataqua Exchange Bank, as was designated by Jones; and that the plaintiffs have in consequence been obliged to pay the bank that sum, to take up their bill drawn for that amount on the railroad, and accepted, but not paid. The case finds that the bill has not been paid to the bank, either by the railroad or the plaintiffs, and the claim of the plaintiffs rests not on an actual payment by them of the bill, but on the ground that their debt to the bank has not been paid according to the contract of the railroad.

The draft of the plaintiffs on the road was accepted and delivered to the bank. The bank thus became the holder; and, taking it for granted that by an understanding between the

plaintiffs and the road, the bill was a good designation under the contract, the payment is still to be made according to the bill. So far as the rights and duties of the drawers and holders are concerned, there is nothing to distinguish this from the ordinary case of an accepted bill, payable at a future day, and delivered by the drawer to his creditor on account of an existing debt. After acceptance, the railroad were primarily liable on the bill ; the plaintiffs, being drawers, were only liable in case the bill was duly presented for payment, and not paid by the acceptors, and notice given of non-payment. The case does not find that the bill was presented for payment, nor any fact to excuse want of presentation ; and consequently the bank have no claim on the plaintiffs as drawers. By neglecting to present the bill for payment, the bank have discharged the plaintiffs as drawers, and must rely on the railroad alone. Whether the bill was taken by the bank as an original or collateral security, the effect is the same ; the bank became chargeable with the bill, and it paid so much of their debt against the plaintiffs. Story on Bills, secs. 109 and 326.

On this ground the plaintiffs must fail in their action. This sum of $2453.30, so far as the plaintiffs are concerned, has been paid and discharged by the acceptance of the railroad. The agreement for which the defendants were sureties, was that the railroad should pay, to a certain amount, such debts as Jones should designate. Taking this debt to have been sufficiently designated, it has been paid by the railroad. The bill has been so treated by the bank that it has paid the plaintiffs' debt to that amount. It is paid by the legal operation of the transaction ; and the payment is as effectual and as beneficial to the plaintiffs as if the bill had been paid in money to the bank when it fell due. The liability of the railroad on the acceptance remains, but the debt of the plaintiffs to the amount of the bill is paid and extinguished.

It is possible that the bill was in fact presented for payment, and due notice of non-payment given, and that by some oversight the evidence was not produced on trial ; if so, perhaps the

omission might be supplied in some future proceeding. But there is another fatal objection to the plaintiffs' case.

At the time when this agreement was made, two foreign attachments were pending, in which the plaintiffs were sued as principal defendants, and the railroad summoned as their trustees — the attachments in the two suits amounting to $23,000. The demand which the plaintiffs then had on the road appears by the case to have been for a balance due to the plaintiffs on account of work due in building the road, and would be a fund, liable to attachment by our trustee process. The debt due to the plaintiffs from the road was therefore attached in those suits at the time when the agreement was made, and the road was legally liable to pay the debt to the plaintiffs in these suits, if they should recover judgment against these plaintiffs. The obligation of the defendants to pay, and the right of the plaintiffs to receive the debt, were suspended by the defendant. If the road had paid the debt to these plaintiffs while those suits were pending, they would be liable to pay it again, if judgment were recovered against the principal defendants in those suits. There does not appear to have been any case in which the liability of the road, as trustees of the plaintiffs, was then fixed by a judgment; and we must understand that the liability of the road, as trustees of the plaintiffs, mentioned in the written contract, must mean this contingent liability, to be charged as trustees in those pending suits. There was no other liability of that kind to which the contract could refer.

The plaintiffs in those suits afterwards recovered judgment for above $8,000, and the road became liable, at the election of the plaintiffs in those suits, to be charged as trustees to that amount, provided they owed as much to these plaintiffs. It was, therefore, a substantial and not a fanciful liability which hung over the road when the written contract was made; a payment of $10,000, or any other sum, was *incompatible* with that liability; and the road, by the terms of their contract, would not be bound to pay till that liability was removed. Actual payment, as trustees under a judgment, would be necessary to constitute a final

discharge of the plaintiffs' demand against the road. But, as sureties for the performance of this agreement, the defendants cannot be held to answer for a breach of it, if payment of the debt was incompatible with the liability of the road in those suits. The suits remained pending until after the three months, limited by the contract for payment of the designated sums, had elapsed; and payment was incompatible with the liability to pay the same debt again, as trustees in those suits. If these suits had been settled by the plaintiffs, and the liability of the railroad, as trustees, discharged, then this objection would have been removed; but on the facts of this case it appears to be insurmountable.

Several other points arise in the case, but the court have not found it necessary to consider them.

*Judgment on the verdict.*